1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### UNITED STATES DISTRICT COURT

### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSUE VILCHIS,<br><br>                    Plaintiff,<br><br>     v.<br><br>CITY OF BAKERSFIELD, JUSTIN LEWIS,<br>D. BARTHELMES, and DOES 1 to 100,<br>inclusive<br><br>                    Defendants. | 1:10-cv-00893 LJO JLT<br><br>MEMORANDUM DECISION AND<br>ORDER RE DEFENDANTS' MOTION<br>FOR SUMMARY JUDGMENT (DOC.<br>28) |

## I. INTRODUCTION

This case concerns the circumstances surrounding the May 24, 2008 arrest and detention of Plaintiff Josue Vilchis by Bakersfield Police Department ("BPD") Officers.  Plaintiff advances five causes of action under 42 U.S.C. §§ 1983 and 1988: (1) unreasonable and excessive use of force; (2) unlawful arrest without a warrant and without probable cause; (3) deliberate indifference to medical needs; (4) malicious prosecution; and (5) civil conspiracy.  Doc. 1. Before the Court for Decision is Defendants City of Bakersfield's (the "City") and BPD Officers Justin Lewis' and Dean Barthelmes' motion for summary judgment on all claims against all named defendants.  Doc. 28.  Plaintiff opposes summary judgment.  Doc. 35.  Defendants replied. Doc. 38.  The motion was originally set for hearing January 9, 2012, but the hearing was vacated and the matter submitted for decision on the papers.  *See* Doc. 40.

## II. BACKGROUND[1]

On May 24, 2008, at approximately 1:30 a.m., police received a report of a Hispanic male with a gun in the parking lot of Señor Pepe's, a local dancing establishment in Bakersfield, California.  Defendants' Statement of Undisputed Fact ("DSUF") #1; Deposition of Patrick M. Mara at 19; Deposition of Jennifer L. Jones at 16-19.  While en route to Señor Pepe's, at approximately 1:45 a.m., Officer Jason Matson's attention was drawn to a truck leaving the parking lot of Señor Pepe's.  Deposition of Jason Matson at 18.  Matson testified the truck was "driving away at a high rate of speed."  *Id.*  The occupants of the vehicle deny that the truck was speeding.  *See* Deposition of Josue A. Vilchis at 25; Deposition of Oscar A. Valdovinos at 34.

Officer Matson conducted a traffic stop of the truck.  DSUF #5.  Officer Lewis and his partner stopped to assist.  DSUF ## 6-7.  Shortly thereafter, Officer Barthelmes and his partner also arrived at the scene to assist.  DSUF #8.

Officer Lewis approached the stopped vehicle on the passenger side while Officer Matson approached the vehicle from the driver's side.  DSUF #8.  The windows of the vehicle were tinted, so Officer Lewis instructed the occupants to roll down all of the windows.  DSUF #10. Once the windows were rolled down, Officer Lewis observed there were six or seven occupants in the vehicle.  DSUF #11.  The seating arrangement within the vehicle is disputed.  Officer Lewis claims Plaintiff was seated closest to the window in the back passenger seat.  DSUF #12. Plaintiff claims he was seated to the inside of another occupant, Ricardo Jimenez, who was seated next to that window.  J. Vilchis Depo at 23, 24.

According to the vehicle's occupants, Officer Lewis asked either: "Where are the guns?" "Where are the fucking guns?" or "Where the fuck are the guns?"  *See* J. Vilchis Depo. at 34;

---

[1] Because on summary judgment the evidence of the non-moving party is assumed to be true and disputed facts are construed in the non-movants favor, the Court sets forth the undisputed facts and notes those disagreements of fact that are relevant to this decision.

2

Valdovinos Depo. at 35.  Some occupants responded that they had no weapons.  S. Vilchis Depo. at 17.  Plaintiff responded by saying: "[They] can't do shit; we don't have no guns," and/or "We don't have shit, man.  We can't get in trouble if we don't have shit."   J. Vilchis Depo. at 36.

At some point during this "conversation," Officer Lewis then instructed the occupants to put their hands where he could see them.  DSUF #13.  Officer Lewis testified that while most of the occupants of the vehicle complied with this request, Plaintiff did not.  DSUF #14.  Plaintiff denies this and maintains that he complied with all of Officer Lewis' commands.  J. Vilchis Depo. at 37.

According to Plaintiff, Officer Lewis then asked Plaintiff whether he was "being a smart-ass" and instructed Plaintiff to get out of the truck.  *Id*. at 37-40.   Plaintiff claims to have complied immediately with this command and that, as he was climbing over Ricardo to exit the vehicle, Officer Lewis pulled him out of the truck.  *Id*. at 40.  Once he was outside the vehicle, Plaintiff claims he had his hands in the air or on top of his head.  *Id*. at 42.  Officer Lewis handcuffed him and whispered in his ear: "Oh, you think you're a tough guy."  *Id*.  As he was being handcuffed, Plaintiff claims Lewis was placing upward pressure on his arms and dragging him away from the truck.  *Id*. at 43-44.  Then, after he had been handcuffed, Plaintiff claims he was swung around (away from the truck) and shoved to the ground, while Officer Lewis yelled, "stop resisting."  *Id*. at 45-46.

Officer Lewis' description of Plaintiff's exit from the vehicle is quite different.  Lewis claims Plaintiff was not compliant with his initial instruction to place his hands where they could be seen.  Deposition of Justin J. Lewis at 34.  In response, and to ensure Plaintiff could not grab a weapon, Lewis placed Plaintiff's arm in a twist lock control hold while Plaintiff was still inside the vehicle.  *Id*. at 40-41.  Officer Lewis recalls that Plaintiff continued to resist, so Lewis applied more pressure to the hold as he directed Plaintiff out of the Vehicle.  *Id*. at 41.  Officer Lewis

3

instructed Plaintiff to "get out of the vehicle," and to "stop resisting." *Id*. at 42. Once Plaintiff

was out of the vehicle, Officer Lewis claims Plaintiff continued to be "uncooperative" and

continued to try to pull away. *Id*. at 42. Officer Lewis could not get Plaintiff into a "standing

modified" search position to search him for weapons, so he forced Plaintiff to the ground to try to

gain control over him. *Id*. at 48-50; DSUF #20.

      While on the ground, Officer Lewis claims Plaintiff continued to resist. *Id*. at 53. Officer

Lewis then struck Plaintiff two or three times with a closed fist to attempt to overtake Plantiff. *Id*.

at 53. Both Officer Lewis and Barthelmes claim Plaintiff then placed his arms under his body.

*Id*. at 57; Deposition of John Barthelmes at 28. Officer Barthelmes then stepped in to assist.

Barthelmes ordered Plaintiff to remove his hands from underneath his body. Barthelmes Depo. at

29. According to Barthelmes, Plaintiff responded with curses indicating he would not comply.

*Id*. Officer Barthelmes then attempted to take hold of one of Plaintiff's arms to remove it from

underneath his body. *Id*. Barthelmes attempted to apply a twistlock control hold on that arm, but

he was unsuccessful, as it was "still locked up underneath his body." *Id*. Officer Barthelmes

observed Officer Lewis "knee" Plaintiff twice in the side. *Id*. at 29-30. Eventually, Officers

Lewis and Barthelmes were able to handcuff Plaintiff. *Id*. at 30-31.

      Plaintiff denies ever offering any resistance. J. Vilchis Depo at 51. He also particularly

denies ever placing his hands under his body, as he maintains his hands were already cuffed

behind his back before he was forced to the ground. *Id*. at 44-45. Plaintiff also testified that

immediately upon hitting the ground he felt pressure on his neck, as though someone had placed

his knee on the back of his neck. *Id*. at 49. He recalls being punched with a fist approximately 20

times, kicked with a shod foot approximately 20 times, and hit with a stick in his head area

approximately 10 times. *Id*. at 51-53. He does not recall exactly how long the beating lasted, but

testified that the feeling he was being hit with a stick "felt like a lifetime." *Id*. at 52. In his best

estimate, it lasted ten minutes. *Id*. He cannot recall the exact physical description of the officers who participated, but he believes approximately six officers punched, kicked, and or hit him. *Id*. at 53. Plaintiff kept his eyes closed most of the time because he was going through "a lot of pain." *Id*. at 50. Plaintiff also claims to have lost consciousness at some point during the incident. *Id*. at 54.

During the altercation, Plaintiff's wife, who was also a passenger in the truck, plead to the officers to stop, explaining that her husband is a former marine, is not a gang member, and is disabled. Deposition of Samantha L. Vilchis at 25-28. She tried to jump out of the car, but another officer held the door shut. *Id*. at 27. Plaintiffs and others attempted to film the incident using their cell phones, but other officers blocked their view using their bodies or flashed their flashlights at the cameras. *Id*. at 26-27; Ricardo Jimenez Depo. at 37, Rafael Jimenes Depo. at 42.

According to Officers Lewis and Barthelmes, once Plaintiff was secured, Officer Lewis helped Plaintiff up, searched him, and placed him into the rear of a patrol unit. Lewis Depo. at 59. Officer Lewis claims that Plaintiff seemed coherent and alert after the altercation, and, although he had some superficial cuts, he did not appear to have significant injuries requiring medical attention. *Id*. at 76. Officer Lewis claims he asked Plaintiff if he need medical assistance, but Plaintiff responded he did not. *Id*. at 75. In contrast, Plaintiff's companions testify that Plaintiff had obvious injuries to the head. *See* S. Vilches Depo. at 32; Ricardo Jimenez Depo. at 51. Plaintiff denies that Officer Lewis ever asked him if he needed medical assistance.[2]

---

[2] Plaintiff's opposition papers deny Defendants' assertion of fact that "Officer Lewis asked the plaintiff if he was in need of any medical assistance and the plaintiff responded that he did not," asserting instead that "Officer Lewis did not ask Vilchis if he needed medical assistance." *See* Doc. 36 at 13 (#32). The excerpts of Plaintiff's deposition offered in support of this denial contain Plaintiff's recollection of the post-beating events. *Id*. Plaintiff does not include any description of Officer Lewis asking him if he needed medical care, but Plaintiff does not directly deny

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

After approximately 14 hours in custody, Plaintiff was released from jail.  J. Vilches Depo at 61.  He then visited the emergency room at Mercy Hospital, where he is informed he suffered blunt head trauma, a mild concussion, and a sprained left elbow.  Flores Decl., Ex. 13 (Emergency Room Report).  The charges against him were dismissed at his first court appearance.  J. Vilchis Depo. at 75.  Defendant Lewis and Defendant Barthelmes testified that neither spoke with anyone from the District Attorney's office about the charges filed against Plaintiff.  DSUF # 38.

### III. <u>STANDARD OF DECISION</u>

Summary judgment is proper if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  A fact is material if it could affect the outcome of the suit under the governing substantive law; "irrelevant" or "unnecessary" factual disputes will not be counted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

If the moving party would bear the burden of proof on an issue at trial, that party must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party."  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  In contrast, if the non-moving party bears the burden of proof on an issue, the moving party can prevail by "merely pointing out that there is an absence of evidence" to support the non-moving party's case.  *Id*. When the moving party meets its burden, the non-moving party must demonstrate that there are

that Officer Lewis made such an inquiry.

genuine disputes as to material facts by either:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c).

In ruling on a motion for summary judgment, a court does not make credibility determinations or weigh evidence. *See Anderson*, 477 U.S. at 255. Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(2). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun*, 509 F.3d at 984.

# IV. <u>DISCUSSION</u>

## A.    <u>Claims Against the City of Bakersfield.</u>

The Complaint asserts all five § 1983 causes of action against all Defendants, including the City of Bakersfield (the "City"). Defendants move for summary judgment as to the City's liability, arguing that Plaintiff has failed to demonstrate that the City can be held liable under *Monell v. Department of Social Services*, 436 U.S. 658, 690-91(1978), which provides that a municipality like the City cannot be liable under § 1983 on a *respondeat superior* theory (i.e., simply because it employs someone who deprives another of constitutional rights). Rather, liability only attaches where the municipality itself causes the constitutional violation through a "policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy." *Id*. at 694. Therefore, municipal liability in a § 1983 case may

be premised upon:  (1) an official policy; (2) a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity;" (3) the act of an "official whose acts fairly represent official policy such that the challenged action constituted official policy"; or (4) where "an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate." *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008).

Here, Plaintiff concedes that he has "chosen not to assert a policy claim, or 'Monell' claim against the City of Bakersfield." Doc. 35 at 13.  Nevertheless, in the section of his opposition addressing the *Monell* issue, Plaintiff continues to "assert[] those claims involving excessive force." *Id.*  A *Monell* claim is the only way to advance a § 1983 claim against the City of Bakersfield.  No other type of "excessive force" claim can be maintained against the City under § 1983.  Accordingly, Defendants' motion for summary judgment as to all claims against the City is GRANTED.

**B.      Excessive Force Claim.**

Defendants move for summary judgment on Plaintiff's § 1983 excessive force claim, arguing (1) that the force used by both Officers Lewis and Barthelmes was objectively reasonable, and/or (2) that, even if the force used was not objectively reasonable, Defendants are entitled to qualified immunity.

**1.      Fourth Amendment and Qualified Immunity Standards.**

The Fourth Amendment protects "against unreasonable searches and seizures."  U.S. Const. amend. IV.  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal

8

quotation and citation omitted).

> ...Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.  Because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.

*Id*. (internal quotations and citations omitted).

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... With respect to a claim of excessive force...: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id*. at 396-97 (internal quotations and citations omitted).

"As in other Fourth Amendment contexts ... the reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397 (internal quotation and citation omitted).  Liability for damages under § 1983 only arises upon a showing of personal participation by the defendant. *Starr v. Baca*, 652 F.3d 1202, 1221 (9th Cir. 2011) (internal citation and quotation omitted). Each Defendant's conduct must be independently evaluated.

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The protection of qualified immunity applies regardless of whether the government official makes an error that is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law

1  and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation and citation

2  omitted).  The doctrine of qualified immunity protects "all but the plainly incompetent or those

3  who knowingly violate the law...." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  Because

4  qualified immunity is "an immunity from suit rather than a mere defense to liability ... it is

5  effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S.

6  511, 526 (1985) (emphasis deleted).

7

8      The qualified immunity inquiry has two prongs: (1) "whether the facts that a plaintiff has

9  alleged ... or shown ... make out a violation of a constitutional right," and (2) "whether the right at

10  issue was 'clearly established' at the time of defendant's alleged misconduct." *Wilkinson v.*

11  *Torres*, 610 F.3d 546, 550 (9th Cir. 2010) (quoting *Pearson*, 555 U.S. at 129).  "The relevant,

12  dispositive inquiry in determining whether a right is clearly established is whether it would be

13  clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

14  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).  This inquiry is wholly objective and is undertaken in

15  light of the specific factual circumstances of the case. *Id*. at 201, 205.  "The principles of

16  qualified immunity shield an officer from personal liability when an officer reasonably believes

17  that his or her conduct complies with the law." *Pearson*, 555 U.S. at 245.  Where there is a

18  dispute in the underlying evidence, qualified immunity cannot be granted. *Wilkins v. City of*

19  *Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified

20  immunity depends on the resolution of disputed issues of fact in their favor, and against the non-

21  moving party, summary judgment is not appropriate.").

22      In the excessive force context, the first step of the qualified immunity analysis requires an

23  inquiry into "whether it would be objectively reasonable for the officer to believe that the amount

24  of force employed was required by the situation he confronted." *Id*. at 954 (quoting *Saucier v*

25  *Katz*, 533 U.S. 194, 205 (2001)).  "That is, the first step in the analysis is an inquiry into the

10

objective reasonableness of the officer's belief in the <u>necessity</u> of his actions, and there is no

Fourth Amendment violation if the officer can satisfy this standard." *Id.* (internal citation and

quotation omitted) (emphasis in original).  The second step of the analysis inquires whether the

officer was reasonable in his belief that his conduct did not violate the Constitution.  "This step,

in contrast to the first, is an inquiry into the reasonableness of the officer's belief in the <u>legality</u> of

his actions." *Id.* at 955.  "Even if his actions did violate the Fourth Amendment, a reasonable but

mistaken belief that his conduct was lawful would result in the grant of qualified immunity." *Id.*

Critically, however, the Court must not lose sight of the summary judgment standard.  If

facts material to resolving Fourth Amendment "reasonableness" and/or any of the related

qualified immunity inquiries are disputed, those facts must be viewed in the light most favorable

to the non-moving party. *See id.* at 951.

### 2. <u>Officer Lopez.</u>

Defendants' opening brief argued that Defendant Lewis was entitled to summary

judgment because the force he used against Defendant Lewis was objectively reasonable.  Doc.

29 at 6.  Alternatively, Defendants argued that even if the force applied was not objectively

reasonable, Defendant Lewis is entitled to qualified immunity. *Id.* at 9.  In opposition, Plaintiff

offers evidence demonstrating that the reasonableness of Defendant Lewis' use of force is

disputed.  Among other things, Plaintiff maintains he never disobeyed Officer Lewis' commands

and never resisted arrest.  Assuming Plaintiff's version of events is true, a reasonable jury could

find that the force applied by Officer Lewis, who admits to punching Plaintiff more than once

with a closed fist, was unreasonable. *Blankenhorn v. City of Orange*, 485 F.3d 463, 480 (9th Cir.

2007), presents a remarkably similar factual situation.  In *Blankenhorn*, it was undisputed that the

plaintiff initially resisted arrest by struggling with officers for a few seconds. *Id.* at 479.  He was

then tackled to the ground, where a group of officers eventually handcuffed him. *Id.*  Once he

was on the ground, one of the officers admitted to punching Blankenhorn several times because

he "was trying to get [his] arms out from underneath him and secure the handcuffs." *Id*. at 480.

The plaintiff denied maneuvering his arms underneath his body, which would have "eliminated

the need for any use of force to release them." *Id*.  Therefore, under the plaintiff's version of

events, which must be accepted on summary judgment, the officer's "punches were not

reasonably justified by the circumstances as he claim[ed]." *Id*.  The same conclusion is required

here, where Mr. Vilches claims his hands were already secured behind his back and denies

resisting arrest in any way.  Defendants do not offer reply arguments regarding this aspect of their

motion.

> This is a classic factual dispute that cannot be resolved on summary judgment.

>> Determining whether a police officer's use of force was reasonable or excessive requires careful attention to the facts and circumstances of each particular case and a careful balancing of an individual's liberty with the government's interest in the application of force.  Because such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.  This is because police misconduct cases almost always turn on a jury's credibility determinations.

*Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (internal citations and quotations omitted).

Defendants' motion for summary judgment on the § 1983 excessive force claim against

Defendant Lewis is DENIED.

### 3.   Officer Barthelmes.

Defendant Barthelmes' motion for summary judgment is less straightforward.  Officer

Barthelmes claims that the only physical contact he had with Plaintiff was to attempt to extract

Plaintiff's arm from under his body.  He claims to have been initially unsuccessful, but that

eventually he and Officer Lewis were able to secure Plaintiffs' arms behind his back in handcuffs.

Defendant Barthelmes claims that he is entitled to summary judgment because he "never struck

the plaintiff or used force beyond what was reasonable and necessary to secure him."  Doc. 29 at

6.

Plaintiff does not specifically recall who punched, kicked or otherwise struck him, nor can he specifically recall how many officers were involved in the alleged beating.  He can only estimate that as many as six officers may have participated.  He admits, however, that his eyes were closed through most of the incident.

In response to Plaintiff's evidence, Defendants' argue that Plaintiff still cannot maintain a claim for excessive force against Officer Barthelmes "simply premised on an unfounded assumption that since the plaintiff claims to have been beaten by multiple officers, one of them must be Officer Barthelmes."  Doc. 38 at 2.  But, Defendants fail to acknowledge authority suggesting Plaintiffs' evidence is sufficient at the summary judgment stage.  Summary judgment is inappropriate where "a jury could draw reasonable inferences from the circumstantial evidence that would support a verdict for the Plaintiff."  *Santos*, 287 F.3d at 852.  Specifically, it is error to enter judgment for defendants in an excessive force case simply because the plaintiff is unable to recall the precise manner by which his injuries occurred.  *Id*.  *Santos* relied upon *Rutherford v. Berkeley*, 780 F.2d 1444, 1448 (9th Cir. 1986), in which the plaintiff/arrestee could not recall which of a group of officers who surrounded him during an arrest actually used physical force against him.  *Rutherford* held:

> While Rutherford could not specifically state whether [three individual officers] punched or kicked him, he did testify that they were among the five or six officers who were surrounding him while he was being beaten and that he saw each of their faces while he was being beaten. These three officers agreed that they were among the five or six officers who detained, arrested and handcuffed Rutherford, but denied punching or kicking Rutherford. From this evidence, a jury could reasonably infer that the named officers were participants in punching or kicking Rutherford. By declining to give Rutherford the benefit of this inference, the district court improperly took this case from the jury. We express no opinion whether a jury would have made that inference; that decision is one for the trier of fact. Accordingly, we reverse and remand for a trial consistent with this opinion.

*Id.; see also Santos*, 287 F.3d at 853.  Assuming Plaintiff's version of the events is true, as this

13

Court must, the facts are remarkably similar to those in *Rutherford*.  Although Plaintiff did not testify that he saw Barthelmes' face, Barthelmes himself admits to having some physical contact with Plaintiff.  This is enough to permit a jury to reasonably infer that Barthelmes participated in the alleged beating.  Whether Barthelmes did in fact do so and/or whether the beating occurred at all are issues for the trier of fact to determine.   Defendant Barthelmes' motion for summary judgment on the § 1983 excessive force claim is DENIED.

### C.      Unlawful Arrest Claim.

Defendants next move for summary judgment on Plaintiff's § 1983 claim for unlawful arrest without a warrant or probable cause in violation of the Fourth Amendment.  It is undisputed that no warrant existed for Plaintiff's arrest.  "Under the Fourth Amendment, a warrantless arrest requires probable cause."  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007)).  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."  *Id*.  Plaintiff was taken into custody for (i) resisting, delaying, or obstructing a peace officer in violation of California Penal Code § 148(a)(1), and (ii) public intoxication, in violation of California Penal Code § 647(f).  Compl., Doc. 1, at ¶ 21.  Defendants do not offer any evidence of Plaintiff's intoxication.  Therefore, for purposes of this motion, it is assumed that Defendants assert probable cause existed to arrest Plaintiff for a § 148(a)(1) violation (resisting, delaying, or obstructing a peace officer).

### 1.      Officer Lewis.

Officer Lewis asserts that he was fully justified in taking Plaintiff into custody because Plaintiff was actively resisting arrest.  Under the qualified immunity analysis, the Court must ask

14

"whether a reasonable officer could have believed that probable cause existed to arrest the plaintiff." *Franklin v. Fox*, 312 F.3d 423 (9th Cir. 2002) (internal citations and quotations omitted).  The inquiry "is an objective one, based on what a reasonable officer would believe if faced with the facts and circumstances actually known to the officer in question." *Id*.  It is indisputable that existing law clearly establishes that Plaintiff could not be arrested in the absence of probable cause.  *See id*.  Therefore, the Court must only determine whether, viewing all evidence in the light most favorable to Plaintiff, Officer Lewis reasonably could have believed he had probable cause for an arrest.  *See id*.  The answer here is the same as for the excessive force claim.  Because Plaintiff has presented evidence that he followed all of Officer Lewis' orders and never resisted arrest, the Court must adopt Plaintiff's version of events for purposes of this motion.  Under that factual scenario, Officer Lewis had no probable cause to arrest Plaintiff.  Therefore, Officer Lewis' motion for summary judgment on the § 1983 unlawful arrest claim must be DENIED.

>    2.    **Officer Barthelmes.**

It is undisputed that, although Officer Barthelmes participated in securing Plaintiff (or applying force to Plaintiff, depending on which version of events is believed), he was not the arresting officer.  Defendants suggest, without citing any authority, that this relieves Barthelmes of any liability for unlawful arrest.  Doc. 29 at 11.  This argument ignores the thrust of Ninth Circuit authority.  Officers are potentially liable under § 1983 even if they did not directly engage in the unconstitutional conduct if they were "integral participants" in the constitutional violation.  *See Boyd v. Benton County*, 374 F.3d 773, 781 (9th Cir. 2004).  Ann officer does not become an integral participant simply by being present at the scene of an alleged unlawful act.  *Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002).  Integral participation requires "fundamental involvement" in the conduct that allegedly caused the violation.  *See id*.  "Officers are

15

fundamentally involved in the alleged violation when they provide some affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object." *Monteilh v. County of Los Angeles*, --- F. Supp. 2d ---, 2011 WL 5027070, *4 (C.D. Cal., July 12, 2011) (reviewing relevant cases). For example, in *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008), the Ninth Circuit found that a officer was not liable for an allegedly unlawful arrest as an integral participant because she was not present when plaintiff was arrested, did not instruct other officers to arrest the plaintiff, and was not consulted before the arrest was made. Likewise, in an unpublished decision, the district court in *Aragonez v. County of San Bernardino*, 2008 WL 4949410, *7 (C.D. Cal., Nov. 18, 2008), found that an officer who was merely providing cover for another officer during an arrest was not liable under an integral participation theory. In contrast, an officer may be liable under § 1983 as an "integral participant" if he or she assisted with the detention of individuals under circumstances where it would have been clear to a reasonable officer that continued detention was unreasonable. *Johnson v. Bay Area Rapid Transit*, 790 F. Supp. 2d 1034, 1053 (N.D. Cal. 2001). According to Plaintiff's version of the events, a group of officers used force upon him while at least one officer repeated the words "stop resisting." Assuming the truth of Plaintiff's claim that he was following commands and not resisting arrest, it should have been clear to any officer involved in detaining him that there was no probable cause to believe he was resisting arrest. Officer Barthelmes admits to assisting with Plaintiff's detention. A reasonable jury could infer from these circumstances that Barthelmes was an integral participant in the alleged constitutional violation. Officer Barthelmes' motion to dismiss the § 1983 false arrest claim is DENIED.

**D.**     **Failure to Provide Medical Care Claim.**

Defendants move for summary judgment on Plaintiff's § 1983 claim for failure to provide

16

medical care.  "Claims of failure to provide care for serious medical needs, when brought by a detainee ... who has been neither charged nor convicted of a crime, are analyzed under the substantive due process clause of the Fourteenth Amendment." *Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir. 2003)

"With regard to medical needs, the due process clause imposes, at a minimum, the same duty the Eighth Amendment imposes: persons in custody have the established right to not have officials remain deliberately indifferent to their serious medical needs." *Gibson v. County of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (internal citations and quotations omitted). "Under the Eighth Amendment's standard of deliberate indifference, a person is liable for denying a prisoner needed medical care only if the person knows of and disregards an excessive risk to inmate health and safety." *Id.*

> In order to know of the excessive risk, it is not enough that the person merely be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, he must also draw that inference.  If a person should have been aware of the risk, but was not, then the person has not violated the Eighth Amendment, no matter how severe the risk.  But if a person is aware of a substantial risk of serious harm, a person may be liable for neglecting a prisoner's serious medical needs on the basis of either his action or his inaction.

*Id.* at 1187-88.

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  Indifference to "medical needs must be substantial." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980).  "Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  To demonstrate deliberate indifference, a plaintiff must to show: (1) "a serious medical need, by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) "the defendant's response to the need was deliberately indifferent." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal

17

quotations and citations omitted).   Deliberate indifference is shown by "a purposeful act or failure to respond to a [detainee's] pain or possible medical need, and harm caused by the indifference." *Id*.  Deliberate indifference may be manifested when officials "deny, delay or intentionally interfere with medical treatment." *Id*.

Plaintiff testified that he lost consciousness.  His opposition also claims Plaintiff had visible injuries to his head serious enough that they indicated he was "in need of medical care." Doc. 36 at 13 (## 32-33).  However, the Emergency Room Report, also submitted by Plaintiff, indicates that Plaintiff denied having lost consciousness and had he "abrasions and contusions on his forehead, scalp, cheek…, hands and arms," but "no lacerations."  Doc. 37 at Ex. 13; *see also* R Jimenez Depo. at 51 (indicating Plaintiff's face had "bruising, bleeding, and scrapes"). Plaintiff never claims to have requested medical care from or indicated that he was in pain to any BPD Officer or jail personnel.

Plaintiff has failed to meet his burden on summary judgment to elicit evidence to support his deliberate indifference claim.  Even assuming the truth of Plaintiff's assertions that he had visible injuries to the head and face, the evidence in the record describes those injuries to be abrasions and contusions, with some associated bleeding.  This does not rise to the level of a "serious medical need," for purposes of the Eighth Amendment. *See Ortiz v. Thomas*, 2009 WL 811452, *2-*3 (D. Ariz. 2009) (dismissing for failure to state a claim prisoner's deliberate indifference claim that he suffered "bruises, headaches, and joint pain due to an alleged use of excessive force," because this failed to describe a "serious medical need" or that "delay could have resulted in significant injury or the unnecessary or wanton infliction of pain").  Likewise, Plaintiff has failed to elicit any evidence that the 14 hours he spent in jail without medical care prior to visiting the emergency room caused him substantial harm. *See Wood v. Housewright*, 900 F.2d 1332, 1334-35 (9th Cir. 1999) (delay in treatment does not constitute an eighth

1   amendment violation unless delay caused substantial harm).

2       Defendants' motion for summary judgment on Plaintiff's deliberate indifference claim is

3   GRANTED.

4

5   **E.    Malicious Prosecution Claim.**

6       Plaintiff's fourth cause of action is a § 1983 claim for malicious prosecution in violation

7   of the Fourth Amendment.  Claims of malicious prosecution are generally not cognizable under §

8   1983 if a remedy is available for such a claim within the state judicial system.  *Usher v. City of*

9   *Los Angeles*, 828 F.2d 556, 561-62 (9th Cir. 1987).  "However, an exception exists to the general

10  rule when a malicious prosecution is conducted with the intent to deprive a person of equal

11  protection of the laws or is otherwise intended to subject a person to a denial of constitutional

12  rights."  *Id*. at 562 (internal citations and quotations omitted).  Therefore, to establish a cause of

13  action for malicious prosecution under § 1983, Plaintiff must: (a) satisfy the requirements for a

14  claim of malicious prosecution under California law; and (b) demonstrate that the malicious

15  prosecution was conducted with the intent to deprive him of his constitutional rights.  *See id*.

16      To establish a cause of action for malicious prosecution under California Law, a plaintiff

17  must demonstrate "that the prior action (1) was initiated by or at the direction of the defendant

18  and legally terminated in the plaintiff's favor, (2) was brought without probable cause, and (3)

19  was initiated with malice." *Siebel v. Mittlesteadt*, 41 Cal. 4th 735, 740 (2007).  "Malicious

20  prosecution actions are not limited to suits against prosecutors, but may be brought ... against

21  other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*,

22  368 F.3d 1062, 1066 (9th Cir. 2004).

23      There is no dispute that the prosecution was initiated by Defendants filing charges against

24  Plaintiff and that the charges were later dismissed.  As discussed above, if Plaintiff's version of

25  events is assumed to be true, the charges were filed without probable cause.

19

1

2          1.   Malice.

3       Defendants contend Plaintiff has not established that the prosecution was initiated with

4

5   malice.  Malice means "actuated by a wrongful motive, i.e., the party must have had in mind

6   some evil or sinister purpose." *Centers v. Dollar Market*, 99 Cal. App. 2d 534, 541 (1950).

7   Malice is established when "the former suit was commenced in bad faith to vex, annoy or wrong

8   the adverse party."  *Id*.  Malice must be proven against a particular defendant to justify an award

9   of compensatory damages against that defendant.  *Id*. at 542.  Like any other factual issue,

10  "malice may be proved by direct evidence or may be inferred from all circumstances in the case."

11  *Id*.  Malice may, but need not necessarily, be inferred from want of probable cause.  *Id*.

12      Here, according to Plaintiff's version of the events, despite the fact that Plaintiff was

13  obeying commands and was not resisting arrest, at least one officer shouted "stop resisting" as a

14

15  group of officers applied force to Plaintiff.  A jury could reasonably find a complete lack of

16  probable cause and therefore malice in these circumstances.

17          2.   Presumption of Independent Judgment.

18      The Ninth Circuit has recognized that "[f]iling of a criminal complaint immunizes

19

20  investigating officers ... from damages suffered thereafter because it is presumed that the

21  prosecutor filing the complaint exercised independent judgment in determining that probable

22  cause for an accused's arrest exists at that time."  *Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir.

23  1981) (*Smiddy I*).  In *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986) (*Smiddy II*), the

24  Ninth Circuit held that Smiddy had not overcome this presumption because he produced no

25  evidence "that the district attorney was subjected to unreasonable pressure by the police officers,

26  or that the officers knowingly withheld relevant information with the intent to harm [him], or that

27  the officers knowingly supplied false information."

28

20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants invoke this presumption but fail to establish that a complaint was ever filed against Plaintiff.  (It is possible, for example, that the case against Plaintiff was opened on the basis of a citation alone.)  Without proof that a complaint was filed, Defendants have not established that any prosecutor exercised independent judgment prior to dismissal of the case. The parties appear to be operating on the assumption that a complaint was filed, as Plaintiffs do not object to Defendants' invocation of the *Smiddy* presumption.  Accordingly, Defendants shall be afforded an opportunity to supplement their motion with proof of the filing of a complaint. Any such proof shall be filed within fifteen (15) days of electronic service of this memorandum decision and order.

Assuming a complaint was filed, Plaintiff has failed to overcome the *Smiddy* presumption because he has produced no evidence "that the district attorney was subjected to unreasonable pressure by the police officers, [ ]that the officers knowingly withheld relevant information with the intent to harm [him], or that the officers knowingly supplied false information."  The only relevant evidence was submitted by Defendants Lewis and Barthelmes, who both declare that they had no communication with the prosecutor about this case.  *See* Declaration of Justin Lewis, Doc. 32, at ¶ 11; Declaration of Dean Barthelmes, Doc. 33, at ¶ 8.

Upon submission of proof that a criminal complaint was filed, the court will enter a separate order granting Defendants' motion for summary judgment as to Plaintiff's § 1983 malicious prosecution claim.  Until such proof is received, this issue will be HELD IN ABEYANCE.

**F.**     **Civil Conspiracy Claim.**

To establish liability for conspiracy, a plaintiff must demonstrate existence of "an agreement or 'meeting of the minds' to violate constitutional rights."  *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539,1540-41 (9th Cir. 1989) (en banc) (internal

21

1  citations omitted).  The defendants must have, "by some concerted action, intend[ed] to

2  accomplish some unlawful objective for the purpose of harming another which results in

3  damage." *Gilbrook v. City of Westminister*, 177 F.3d 839, 856 (9th Cir. 1999) (internal citation

4  and quotation omitted).  Whether defendants were involved in an unlawful conspiracy is

5  generally a factual issue to be resolved by the jury when there is a possibility that the jury can

6  infer from the circumstances that the alleged conspirators had a meeting of the minds and thus

7  reached an understanding to achieve conspiracy objectives.  *Mendocino Env'tl Ctr. v. Mendocino*

8  *County*, 192 F.3d 1283, 1301 (9th Cir. 1999).  A plaintiff must produce " 'concrete evidence' of

9  an agreement or 'meeting of the minds' " between defendant conspirators to violate plaintiff's

10  rights.  *Radcliffe v. Rainbow Const. Co.*, 254 F.3d 772, 782 (9th Cir. 2001).  The "meeting of the

11  minds" may be "express or implied."  *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991).

12  "A conspiracy to deprive a plaintiff of a civil rights action by lying or concealing evidence might

13  constitute such an actionable deprivation."  *Id.*

14  Viewing the evidence in the light most favorable to Plaintiffs, several officers deliberately

15  blocked Plaintiff's view of the arrest scene and prevented the capture of the arrest scene on video.

16  Although this evidence is entirely circumstantial, a jury could reasonably infer from these

17  circumstances that the officers were operating under an implied agreement to conceal evidence of

18  an unlawful use of force and/or an unlawful arrest.  Although this showing is very thin, it is

19  sufficient to survive summary judgment.

20  Defendants' motion for summary judgment on the 1983 civil conspiracy claim is

21  DENIED.

## V. CONCLUSION AND ORDER

For the reasons set forth above, Defendants' motion for summary judgment is

(1) GRANTED as to all claims against the City of Bakersfield;

22

(2) DENIED as to the § 1983 excessive force claim as to Defendants Lewis and Barthelmes;

(3) DENIED as to the § 1983 unlawful arrest claim as to Defendants Lewis and Barthelmes;

(4) GRANTED as to the § 1983 failure to provide medical care claim as to Defendants Lewis and Barthelmes;

(5) HELD IN ABEYANCE as to the § 1983 malicious prosecution claim as to Defendants Lewis and Barthelmes, pending submission of further evidence within fifteen (15) days of electronic service of this memorandum decision and order; and

(6) DENIED as to the § 1983 civil conspiracy claim as to Defendants Lewis and Barthelmes.

**SO ORDERED**
**Dated: January 13, 2012**

                                        **/s/ Lawrence J. O'Neill**
                                        **United States District Judge**